**JONES v. THIBODEAUX.**
**No. 1477.**

Court of Appeal of Louisiana. First Circuit.
Oct. 3, 1935.

Simmons, Simmons & Dolese, of Napoleonville, and Rene Himel, of Franklin, for appellant.

Brumby & Bauer and Chas. E. Fernandez, all of Franklin, for appellee.

DORE, Judge.

On July 2, 1932, at about the hour of 8 o'clock p. m., plaintiff was struck by an automobile operated by defendant's minor son.

Judgment was rendered in plaintiff's favor for the sum of $4,586.25, including expenses incurred in going to and from the hospitals.

Defendant appealed, and the plaintiff answered the appeal, asking for an increase to the amount of $11,540.75.

This accident happened at about half way between Bayou Boeuf bridge and Bayou Ramos bridge on route United States No. 90, commonly known as the Spanish Trail, in the parish of St. Mary. This highway or route is a paved one, having a concrete slab of 18 feet, with a center black strip for traffic guidance, with dirt shoulders of approximately 6 feet in width on each side of the concrete slab; and, at the situs of the accident, this route, east and west, is practically straight for some distance.

As stated by the defendant, the question is whether or not the accident or collision resulted from negligence of plaintiff or from negligence of defendant's minor son.

According to plaintiff, he and his companion were walking along the highway in an easterly direction for the purpose of attending church. After crossing the Ramos Bayou bridge, he and his companion proceeded to walk on a beaten footpath on the south side of the concrete slab of the highway, in single file, plaintiff preceding. While so walking, plaintiff was struck down by an automobile operated by defendant's minor son. Defendant's minor son was traveling in a westerly direction. The force of the blow, according to plaintiff and his companion, threw plaintiff and defendant down, plaintiff in an adjoining ditch, from which ditch the companion of plaintiff rolled him upon the dirt shoulder of the said highway, wherein he remained until transferred to a hospital.

Plaintiff and his companion contend that they neither saw the automobile which struck plaintiff nor did they see any lights, nor did they hear any warning signs which would have attracted their attention.

Plaintiff and his companion, corroborated by other witnesses, say that other automobiles had previously passed, traveling in both directions; that immediately after the accident two automobiles stopped west of them, one of which was being driven by defendant's minor son.

Defendant denies the negligence of his son, and pleads in defense that the accident was unavoidable on the part of his son, and that the sole cause of the accident was the negligence of plaintiff in suddenly stepping in front of and in the path of the automobile.

The lower court has exhaustively solved all of the facts in the case in favor of plaintiff. We are convinced that it has not erred.

The time of the injury is well established as July 2, 1932, at about 8 o'clock p. m.; it is well established that it was a dark night and in the country. The road in question is a heavy traveled road; it being one of the main routes of this state.

We are convinced, as was the lower court, that plaintiff and his companion were traveling in an easterly direction, in single file, plaintiff preceding his companion by about 3 feet, along a footpath on the shoulder about 2 feet on the south side of the concrete slab; that automobiles were frequently passing them going both ways, east and west, of which they took no particular notice. Suddenly, as they walked forward in the darkness, the foremost, plaintiff, was struck by an automobile and sustained the injury of which he

complains; his companion was knocked down by the same blow but not injured.

We cannot agree with defendant in his version that the accident happened in the manner he sets out, that is: "That defendant's minor son had been trailing another car for some two hundred yards, at about fifteen feet from the rear, and that when his son attempted to pass this car, plaintiff deliberately jumped in front of the automobile." Defendant, having made a general denial of the plaintiff's petition, offered the plea of contributory negligence, but not in the alternative. It then rested upon the plaintiff to prove the negligence of defendant's son, and, in return, defendant to prove negligence on behalf of plaintiff.

The plaintiff has proved by a preponderance of the evidence that defendant's minor son was operating a junked model T Ford on this highway at a speed of approximately 30 to 40 miles an hour, and without adequate lights. Defendant's son admits that, when he left a filling station some mile and a quarter from the situs of the accident, he practically trailed an automobile belonging to a Mr. Ells at a distance of 3 feet to 15 in the rear. A Mr. Boudreau, a disinterested witness, the driver of the Ells' car, testified that he perceived a flicker light now and then in the rear, observing the same through the little mirror in the front; that this light was caused either by a flashlight or a lantern. He is positive that defendant's son's automobile had no headlights. He is somewhat corroborated by Mr. Ells, who states that just prior to the accident he perceived no reflection of any oncoming lights on the windshield. Mr. Boudreau further states that he passed the plaintiff and his companion before they were struck by defendant's car, but had only traveled about 85 feet when he heard the impact, and, immediately following the impact, defendant's son ran into the Ells' car. Boudreau further testified that, when he passed plaintiff and his companion, they were walking in the manner heretofore detailed; that the accident occurred in the attempt of defendant's son in passing the Ells' car; that defendant's son gave no warning of his attempt to pass the Ells' car.

The law governing this case is Act No. 296 of 1928, and particularly the following:

"Section 14. (Overtaking a Vehicle).

"(a) The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.

"(b) The driver of an overtaking motor vehicle not within a business or residence district as herein defined shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction.

"Section 15. (Limitations on Privilege of Overtaking and Passing).

"(a) The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety."

Boudreau testified that defendant's son gave no warning of any kind. Defendant's son admits that he trailed the preceding car within 3 to 15 feet behind. He testifies that the accident occurred as he attempted to pass the Ells' car. He admits that he did not have a clear vision of any distance, and, when asked the question as to why he had not seen plaintiff and companion, he replied: "I did not see them until after the collision," and further, "I was too close behind the Ells' car." (Transcript, p. 86).

"Section 17. (Following Too Closely).

"(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicles and the traffic upon and condition of the highway."

Section 19:

"(a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn."

Section 46, subsec. (a), requires all vehicles to be equipped with a horn in good working order, capable of emitting sound audible under normal conditions from a distance of 200 feet.

Section 50, subsec. (a), provides that all vehicles shall be equipped with lighted

front and rear lamps from one-half hour after sunset to one-half before sunrise; and section 52, subsec. (a), provides that all head lamps of motor vehicles shall produce a driving light sufficient to render clearly discernible a person 200 feet ahead.

Let it be remembered that defendant's car was a model T Ford, made from the junk pile, without even a top, and we have a mental picture of the same.

■ Defendant's son violated all of the provisions quoted above. We are satisfied from the evidence that he was following the Ells' car too closely; that he failed, in leaving the lane of travel, to see that he could leave the direct line in safety, particularly in view of pedestrians who had a legal right to the use of the highway; that he failed to give any warning of his approach or presence; that the car was not equipped with lights; all in all, he was grossly negligent, and his acts are the sole and only proximate reason of this unfortunate accident.

■ However, the defendant insists that plaintiff was negligent, in that plaintiff violated section 20, subsec. (c), par. 2, Act No. 296 of 1928, providing "that whenever pedestrians are using the highways they shall be required to walk on the left hand side of the highway," and that such negligence bars his recovery.

Plaintiff was traveling on a beaten footpath alongside the concrete slab, and not on the traveled portion of the highway. Even if plaintiff had been walking on the concrete slab, that in itself would not be sufficient. Defendant's son should have seen him; he should have had a horn to give proper warning, and should have given a warning signal; he should have had lights as heretofore stated; and he should not have left his line of travel until safety was insured.

We are not prepared to hold the violation of Act No. 296 of 1928 requiring pedestrians to walk on the left hand side of a highway constitutes negligence "per se." It is our view that this rule was to prevent injury to pedestrians by traffic coming from the rear and not by oncoming traffic.

"The mere fact alone that plaintiff was guilty of some negligence does not necessarily bar his recovery."

■ "Contributory negligence, in order to bar recovery in an action for damages, must have in it the element of being the proximate, not the remote, cause from which the accident or injury resulted." Pepper v. Walsworth, 6 La. App. 610.

We are therefore of the opinion that the sole proximate cause of this accident was the gross negligence of defendant's son, and that plaintiff's action in the premises was not a proximate cause thereof.

The plaintiff has answered the appeal, praying for an increase. We find no reasons to increase the amount allowed. The lower court was in better position to determine the ability of defendant to pay, and, as stated heretofore, we see no reasons to disturb its judgment.

Judgment affirmed.